# 24-2248

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

MARTIN L. COHEN, pro se

Plaintiff-Appellant,

v.

GENEVRA CUSHMAN, et al.

Defendant-Appellees.

On Appeal from the United States District Court
for the Northern District of New York

Brief for the Appellant, Martin L. Cohen, pro se

Martin L. Cohen, pro se
1 Shore Avenue #464
Oyster Bay, NY 11771
Tel. (516) 364-7632
onlineprof27@gmail.com

# TABLE OF CONTENTS                    page

Table of Authorities.................................................................................4

Jurisdictional Statement..........................................................................5

Issues Presented on Appeal.....................................................................5

Statement of the Case..............................................................................5

Summary of the Argument......................................................................6

SUMMARY OF FACTS:
   A.  Introduction and Background..........................................................6

   B. Freedom of the Press and its Influence on the
      Organization of the New York State Constitution...........................8

   C. The Importance of Regulating Illegal Campaign Financing.............. 10

   D. The Requirements of Due Process Are Built Into State & Federal Law...11

   E.  The Newsday Special Investigative Report, "The Insiders"...............13

   F.  What legal action was taken after the publication of the Newsday
      Special Investigative Report?.....................................................15

   G. Correspondance with the State Board of Elections 2020-2022.............16

   H.  Unintended Consequences: Inaction by the SBE enables
      political influence to filter into the courtroom...............................18

   I. The Key Controlling Factor in Deciding Jurisdiction Ought
      to be the Goal of the "Criminal Intent".......................................19

   J. The State Board of Elections failed to ensure the constitutional
      mandate for bi-partisanship........................................................21

   K.  When the State abrogates in its duty to investigate election law crimes,
      it subjects the state judicial system to the risks of corruption. ............22

**TABLE OF CONTENTS (CON'T)**                              **page**

ARGUMENT:

      I. The Appellant had made numerous written and oral
      complaints to the members of the State Board of
      Elections, but was denied an opportunity to be heard...............23

     II. The election law prohibits illegal political contributions...........24

    III. The various provisions of the section law allow for complaints
       to be directed to the full board of elections, an authorized board
       committee, or the Division of Enforcement which includes
       special investigators.................................................….25

    IV. The State Constitution allows any complaint brought before the
       state, against any individual, in which the intent involved a political
       issue or violation of the election law, to first be commenced before
       the State Board of Elections.........................................26

CONCLUSION.................................................................27

A PRAYER FOR RELIEF.......................................................27

## TABLE OF AUTHORITIES       page

**United States Constitution:**
First Amendment (Freedom of the Press)......................................8
Fourteenth Amendment.................................................................17
**Federal Statutes:**
Help America Vote Act, Sec. 402(E) Establishment
   of a State-Based Administrative Complaint Procedure...................11, 12
**Constitution of New York:**
Article II, Suffrage, Sec. 8, Bi-partisan registration and election board..........8
Article VI, Judiciary.....................................................................9
**State Statutory Law:**
*Administrative Procedures Act;*
APA 307(1) Decisions, determinations, and orders..........................11, 25
*Civil Practice Rules and Laws;*
CPLR 6402 Oath requirement for a receiver..................................14, 24
*Election Law;*
ELN 03-102 State Board of Elections; general powers and duties..............9
ELN 03-102(1)power to promulgate rules and regulations...................9, 17
ELN 03-102(7) authorizing judicial proceedings....................................9
ELN 03-104(2) enforcement powers...........................................9, 15, 25
ELN 03-105(1) Administrative complaint procedure.........................12, 17
ELN 14-114 Contribution and receipt limitations........................11, 15, 24
ELN 14-126 Violations; penalties...............................................10, 24
ELN 14-130 Campaign funds for personal use.....................................10
ELN 17-100 A receiver is a public officer..........................................14
*Judiciary Law;*
JUD Sec. 36.2(b) Appointments......................................................13
JUD Sec. 36.2(d)(1) limits on compensation to receivers........................13
*Penal Law:*
PEN 10.00(15) Definition of Public Servant.......................................14
**State Cases:**
*People v. Trump,* No. 71543-23, NYS Sup. Ct., NY Co. Jan.3, 2025.............18
**Other Sources:**
*"The Insiders",* Special Investigative Report, Newsday, Oct.5, 2014, p.1....... 13
*"On Reading the Constitution"* by Laurence Tribe & Michael Dorf,
  Harvard University Press, Cambridge, Mass. 1991

## JURISDICTIONAL STATEMENT

This appeal is from a final decision the United State District Court for the Northern District of New York. The case before the court was based on numerous complaints to the State Board of Elections about violations of the election law. The Appellant was seeking a remedy for alleged manipulation of matters before the State Supreme Court in Riverhead, NY. A decision was issued by the court first on Feb. 5, 2024 (Doc. 88), and then a final decision on August 5, 2024 (Doc.104).

## ISSUES PRESENTED ON APPEAL

1. Whether the Appellant's civil and constitutional rights were violated by the State Board of Elections, when he was denied a hearing after numerous written and oral complaints were made.

2. Whether the State Board of Elections has subject matter jurisdiction over political issues and violations of the state election law.

## STATEMENT OF THE CASE

A. An Investigative Report was published by Long Island's only daily newspaper.

A Special Investigative Report, "The Insider's" (*Newsday*, Oct.5, 2014) was published by Long Island's only daily newspaper. It exposed how certain lawyers were manipulating cases in the New York State Supreme Court in Riverhead, NY.

B.The Appellant was also maintaining a lawsuit in the same court.

 The Appellant was involved at the same time, as the Special Investigative Report

was published, in the same court. In addition, the same lawyers and the same judge

were involved which raised serious concerns that his case was also being

manipulated by the opposing counsel in his case, by attorney, Ronald Rosenberg,

who is now deceased.

C. The Appellant made formal complaints to the State Board of Elections.

The Appellant demanded an investigation and hearing on the matter, but was

denied any form of due process.

## SUMMARY OF THE ARGUMENT

The Appellant contends that the State Board of Elections (the "SBE") denied him a

hearing, and never responded to his complaints. The Appellant complains that his

rights under the Fourteenth Amendment for due process were violated, as well as

those state statutes which also protected his civil rights.

## SUMMARY OF FACTS

### *A. Introduction & Background*

 The foundation for the American system of justice is the United States

Constitution. The US Constitution like any other sovereign nation is prospective in

its nature. It is a vision statement of how the government will be run, and how it

will be organized. The Founders of our nation did not provide explicitly for political parties or political questions in the US Constitution.

This is because during the founding of our nation, the original thirteen states did not want to allocate all political power to the new federal government, and thus, each state retained its own state constitution. Under this arrangement, a representative form of government emerged in which states conducted their own elections, and determined who their elected representatives would be in both the federal and state governments. This was accomplished by states enacting their own election laws.

Consider the following about the New York State government:

- The *Surrogates Court* has subject matter jurisdiction over wills and estates;

- The *Commercial Division* of the State Supreme Court has subject matter jurisdiction over commercial disputes of over $500,000 in NY County;

- The *State Education Department* has subject matter jurisdiction over public school districts;

- The *State Office of the Professions* has subject matter jurisdiction over licensed professionals, including CPAs, nurses, architects, and many other professions;

- The *State Human Rights Division* has subject matter jurisdiction over the treatment of state employees;

- The *State District Courts* have subject matter jurisdiction in civil cases up to $15,000. Small claims up to $5,000, and landlord-tenant matters. In criminal cases, mainly misdemeanor cases;

- The *State Appellate Courts and Court of Claims* also have their own subject matter jurisdiction, as well as the *State Court of Appeals*.

The point of this analysis is that specific types of cases must be commenced in the state courts, or tribunals, that have the specific subject matter jurisdiction. While it is true that the State Supreme Court is a court of general jurisdiction, it is often the case that a complainant must first initiate the complaint in the court or tribunal with the appropriate subject matter jurisdiction before commencing an action in the Supreme Court. This is sometimes referred to the exhaustion of remedies doctrine.

In this brief, *Suffrage,* Art. II , Section 8, addresses the issues of voting and the broad rules governing election law. It is this Section 8 of Art.II of the State Constitution also provides for the creation of an "election board". This is now called the State Board of Elections of New York (the "SBE").  The Appellant contends that the Framer's of the State Constitution intended to integrate the provisions of the State Constitution in a manner that aligns with, and compliments, the US Constitution by addressing political issues in the State Constitution.

*B. Freedom of the Press and the Organization of the NY State Constitution*

Under the State Constitution, Democratic and Republican parties share power equally within the SBE. Under the US Constitution, the First Amendment included Freedom of the Press, but had no other specific provision in the Constitution for keeping the public informed about political issues being litigated, or election law disputes.

The Framers of the State Constitution must have believed that the most practical solution was establishing the State Board of Elections for handling these issues. Rather than burdening the judicial system, under Article VI, the Framers created the SBE to be a specialized governmental body within the executive branch of the state government with its own subject matter jurisdiction. The State Legislature enacted the election laws.

Under ELN 3-102 *State board of elections; general powers and duties,* the State legislature has since enacted a comprehensive set of election laws which enhances all aspects of election law including how the SBE should conduct the scope and depth of its operations. Under ELN 3-102(7), the SBE is authorized to operate as a judicial tribunal. Under ELN 3-102(1), the SBE also promulgates rules for the proper administration of elections, and requirements for the establishment of political parties. The State Legislature built subject matter jurisdiction into the SBE, so that it could adjudicate political issues and promulgate new rules.

As a judicial tribunal, violations of election law can be determined by the members-at-large of the SBE, at a hearing, or may proceed directly to the Division of Enforcement. The jurisdiction of the SBE includes all matters of a civil, criminal, or administrative nature. Under ELN 3-104(2)(a) there are specially-designated law enforcement officials that investigate on behalf of the SBE. They have similar powers as the state police, and under ELN 3-104, the Chief Counsel of the Enforcement Division acts as both the prosecutor and trier-of-fact in

Enforcement Division cases. In addition, under ELN 3-104 (2)(b), the State Police are authorized to assist in cases when needed. The election law also enables the SBE to refer matters to the State Attorney General.

### C. The importance of regulating illegal campaign financing

An important function of the SBE is regulating contributions to political campaigns. The applicable law is found at Article 14, *Campaign Receipts and Expenditures*. In particular, ELN 14-130 applies to *"Campaign funds for personal use"*, and ELN 14-126 *"Violations; penalties"* assigns criminal penalties to illegal payments.

The underlying rational for regulating campaign contributions is the same for federal and state elections. Whether it is the US Congress or the New York State Legislature, money is nearly always an important factor in determining the outcome of an election. Although the amount of political contributions isn't a guarantee of winning, it always helps greatly. In the federal judiciary, federal judges are appointed. They do not run for office. They are appointed by the President of the United States with the advise and consent of the US Senate.

However, in New York, state court judges must be elected by voters in their local judicial district. In some judicial districts the number of registered voters can be less than 20,000 voters, so it does not take a great amount of money to sway and influence an election. Thus, campaign contributions are highly regulated under

apprehensive that these attorneys were dishonest, and that they would cheat and manipulate his case, as they did in the receiverships. Yet, he was also opposing them in the same court.

According to the Newsday Report, the misappropriation of funds by attorney, Ronald Rosenberg, involved a check being written from a court-ordered receivership account for $92,000 directly to a minor political party. Under ELN 14-114, the statutory limit is $62,500.00. Thus, this distribution of money intended for the bank became an election law violation since the money was clearly diverted as a political contribution to a minor political party. It must be stressed that these funds either belonged to the bank, or to the former property owner, and were held in escrow for their benefit. It is clear that this was a violation of ELN 3-104 which is a criminal violation. Thus, attorney, Ronald Rosenberg was committed criminal activity in a court-ordered proceeding, but was not being held accountable. Mr. Rosenberg has since passed away, and cannot be prosecuted. However, he was the lead plaintiff's attorney in the Appellant's family dispute which is still ongoing and still has the taint of corruption.

*F. What legal action was taken after the publication of the Newsday Special Investigative Report?*

After reading and analyzing the Newsday Special Investigative Report, the appellant waited to see how the legal authorities would handle this publicly-reported illegal diversion of funds. Even Newsday commented that this Report

*Appointments.* Once an attorney takes their Oath of Office, they become "court-appointed" and acts as the "receiver".

A receiver is a "public officer" under ELN 17-100, and is required to take an oath of office under CPLR 6402. Once appointed, the receiver collects the rental income from the commercial property, and uses these funds to pay the required property expenses associated with the property ownership during the period of the receivership. The receiver is supposed to be a neutral party, an extension of the court. Eventually the property is sold. Any shortfalls will be deducted from the equitable positions of the mortgage bank and /or the former property owner.

This process relieves the defaulting property owner from winding down the commercial property operation himself, and preserves any remaining equitable interest in the property for the bank. After the bank is repaid, if any is left, that residual amount goes to the former property owner.

The Newsday Special Investigative Report was front page news when it was published. The Report caught the attention of the Appellant since he had an ongoing case involving a family dispute in the same court in Riverhead and with one of the same judges that was a focus of the Newsday Special Investigative Report. In addition, two of the attorneys cited in the Special Investigative Report were also involved in his family dispute. This raised serious concerns for the Appellant since the Special Investigative Report documented the misappropriation of funds, and other dishonest acts of the attorney / receivers. The Appellant was

would capture the attention of the US Attorney (p. A-88). With the appearance of impropriety surrounding the Appellant's family dispute, the Hon. Justice Emily Pines held a special in-court hearing on the matter. (The transcript of the proceeding has been submitted.) The next day she summarily recused herself. However, she should have ordered an investigation into whether the family dispute was tainted by corruption by the attorneys, but she didn't.

Then appellant waited patiently for weeks, then months, and then years. However, no attorney or other person involved in the "Insiders", Id. was ever charged or convicted. This left the appellant with a feeling that corruption was inherent and ongoing in the system.

Out of concern that his own case was being manipulated, the appellant took it upon himself to notify the SBE. After all, if these attorneys were committing criminals activity in court-ordered foreclosure actions in Suffolk Supreme Court, then they were the same criminals acting as attorneys in his family dispute, also in Suffolk Supreme Court.

*G. The Correspondence With the State Board of Elections 2020-2022.*

## 2020

In early 2020, the Appellant telephoned the SBE, and requested that an officer call him back, but none did. Then on June 7, 2020, he mailed a Request for a Hearing along with his *Complaint for Crimes in Violation of the Election Law,*

state law. Under ELN 14-114 *Contribution and receipt limitations* the current limit is $62,500 per year.

The underlying justification for restricting and prohibiting illegal campaign contributions is to prevent the deprivation of a fair election to voters. Elections are considered to be the essential feature of any democracy. However, if money becomes a more important factor in determining the outcome of an election, especially for a state court judge, then the rule-of-law is likely to be undermined. Once political considerations outweigh the rule of law, then this undermines the entire state judicial system and results in corruption.

*D. The requirements of due process are built into state law and federal law.*

In order to create transparency within the system, the SBE can also hold public hearings on matters focusing on the application of the election law, and the SBE meetings are subject to the state administrative procedures act under APA 307(1) *Decisions, determinations and orders* which requires written decisions.

The Help America Vote Act ("HAVA") is a federal law, enacted by the US Congress in 2002, that provides a program for states that seek federal funds to upgrade their voting machines and technology. If a state applies for such funds and accepts such money, then it must also include statutes in its state election law that correlate to a national standard of election law as promulgated by HAVA. New York has enrolled in this program. Once enrolled, that state must also integrate the

HAVA grievance procedures. It was the intent of the US Congress to insure that the national standards of due process under the US Constitution would be adhered to in any state that accepted HAVA Funds.

Under the Help America Vote Act, Sec. 402(E) *Establishment of a State-Based Administrative Complaint Procedure* was also cited by the Appellant in the lower court as a violation by the SBE of the Appellant's right to have a hearing and the right to be heard. The statute states:

*"At the request of the Complainant there shall be a hearing on the record."*

Since New York State has accepted HAVA funds, this statute ought to be a sufficient basis for finding that the lower court ignored the Appellant's right to be heard. ELN 3-105(1) states:

*"The state board of elections shall establish and maintain a uniform, nondiscriminatory administrative complaint procedure pursuant to which any person who believes that there is a violation (including a violation which has occurred or is occurring or is about to occur ) of any provision of title three of the Help America Vote Act of 2002 may file a complaint."*

It should not go unnoticed that the Appellant cited the federal Help America Vote Act (the "HAVA"), as an additional basis for justifying a hearing about his complaints. If for no other reason, the SBE violated the due process rights of the Appellant, and the lower court also ignored HAVA, an act of the US Congress. The lower court also ignored the Fourteenth Amendment to the US Constitution since procedural due process requirements are a requirement for all state proceedings.

*E. The Newsday Special Investigative Report, "The Insiders" , Oct.5. 2014, p.1*

The case at bar focuses on a Special Investigative Report, *"The Insiders"*, Newsday, Oct.5, 2014. This Report was an independent investigation conducted by Long Island's only daily newspaper, Newsday. The investigation revealed how certain attorneys were ignoring and manipulating laws governing the way that commercial mortgage foreclosure actions were being handled in the Suffolk County Supreme Court in Riverhead, Long Island, New York.

For many years, there were serious abuses in the way attorneys in New York State were handling court-ordered receiverships. In 2000, Chief Justice Lippman changed the *State Judiciary Act, Part 36 : Rules of the Chief Justice* to better regulate how receiverships were to be administered by the courts. Later in 2009, Chief Justice Lippman added the *Rules of the Chief Justice under Part 36* of the State Judiciary act to limit the amounts to be paid to attorneys that act as receivers JUD Sec. 36.2(d)(1).

Receiverships govern the process of settling mortgage foreclosures. Once a commercial property owner defaults on a commercial mortgage, the bank asks the court to receive temporary title to the property, thus the term "receiverships". Then, the presiding judge, selects an attorney from a list of qualified attorneys which is prepared by the NYS Office of Court Administration under JUD Sec. 36.2(b)

(p. A-22). Without receiving any reply, the Appellant wrote again on July 29, 2020, citing APA 307(1), but again no reply (p. A-67).

### 2021

On April 22, 2021, the Appellant personally delivered a letter to the Executive Directors of the SBE. (p. A-70). Along with the letter, he included a *Supplemental Complaint* (p. A-55). which focused on the NY Trust Act, an enactment by the NYS Legislature dealing with corruption in politics. An answer to his letter was sent by Ms. Carla DiMarco, Associate Counsel (p. A-72), acknowledging receipt of the letter.

This was followed-up with another visit to the SBE where he met Ms. Genevra Cushman, a Special Investigator with the Division of Enforcement. She followed up with an email message, (p. A-73), however, surprisingly, she did not seem familiar with the election law.

### 2022

On May 30, 2022, a general letter was sent to the SBE (p. A-74) specifying ELN 3-102, and ELN 3-105(4) requesting a hearing, along with a *Complaint for Fraud and Corruption Under Election Law Sec. 3-104,* (p.A-43)*.* On June 3, 2022, the Appellant received a letter (p. A-76) from Michael Johnson, Chief Enforcement Counsel stating that a he was unable to ascertain which violations were being complained of. On July 26, 2022, the Appellant requested a meeting in order to provide the evidence and information, but Mr. Johnson never replied, (p. A-77).

**2023**

After years of filing complaints, both oral and written to the SBE, the appellant was never granted an opportunity to be heard, a requirement under the Fourteenth Amendment to the United States Constitution which requires due process of law, as does the State Constitution and by state statute under the state administrative procedure act. On February 21, 2023, the Appellant commenced an action in the US District Court against the Appellee for a violation of his constitutional rights and other civil rights.

*H. Unintended consequences: inaction by the SBE enables politics to filter into the courtroom....*

In order to fully understand and analyze the actions of New York State and the administration of its law enforcement system in this matter, there is value and insight by comparing and contrasting this matter with precedent decided in the case of the *People v. Trump,* [No. 71543-23, NYS Supreme Court, NY County, Part 59, Jan.3, 2025 (JMM)].

The ability to compare and contrast the instant case with the recent case decided in *People v. Trump, Ibid.* reveals that the state prosecutors have purposely avoided the jurisdiction of the Board of Elections despite its specialized subject matter jurisdiction over political issues and violations of the election law. Consequently, by side-stepping the jurisdiction of the State Board of Elections and the adjudication of the election law, politics has been thrust into state supreme

court cases. The appellant is not making this analysis for political reasons.
However, the following legal analysis demonstrates how politics filters into legal
proceedings, facilitated by the executive branch of state government, when the
jurisdiction of the SBE side-stepped. There may be an argument for selective
enforcement of the law since the results would have been very different, if
adjudicated by the SBE.

## COMPARISON CHART

| Name of Case<br>Case locator | Cohen v. Cushman<br>No. 2:24-cv-0460<br>(USDC/NDNY, 2024) | People v. Trump<br>No. 71542-23<br>(NYS Sup. Ct., NY County) |
|---|---|---|
| Dollar amount<br>of illegal funds: | $92,000 | $125,000 |
| Nature of violation: | Illegal campaign<br>contribution under ELN 3-104 | Falsification of business<br>records |
| Conviction: | None, not even a hearing<br>denial of due process | 34 Felony Counts<br>suspended / deferred sentence |
| Source of<br>Funds: | Misappropriated from<br>banks and property owners | His own personal funds |
| Intent/<br>mens rea | To make a political<br>campaign contribution | To conceal hush money used<br>to protect his political campaign |

*I. The key controlling factor in deciding jurisdiction ought to be the "criminal intent."*

This has always been the deciding factor in commencing any criminal action. In any case involving a situation involving a wrongdoing or criminal act, or even an administrative hearing the intent, or mens rea of the person involved is a controlling factor in the determination of guilt or innocence. For example, in the instant case, it is clear that funds being held in escrow, by a court-ordered receiver, for the benefit of a financial institution or property owner should not be used for the political self-interest of the receiver. This was clearly a misappropriation of funds, and a criminal violation of the election law.

The use of comparisons helps to contrast and better understand the proper application of law. In the case of the *People v. Trump,* although Donald Trump was not an elected official at the time of his violation, he was clearly the de facto head of the Republican National Committee. Moreover, his concealment of funds to Stormy Daniels, was an effort to protect his candidacy for the upcoming presidential election. At the time of his money transfers, he wasn't trying to defraud his own business, or any partners. He was merely anxious that the revelation of his affair would cause him to lose the upcoming presidential election, and therefore sought to avoid disclosure by paying "hush money" from his own business. This was an act to evade disclosure of a political campaign expenditure.

Intent is of prime importance in the conviction of any crime. It is a key element of the any crime or wrongdoing, along with corresponding evidence of the act, or wrongful behavior. With the existence of both elements to the crime, proof

of causation establishes an enforceable crime. It is the opinion of this appellant that the State in its prosecution of Donald Trump applied the wrong intent to the crime. Albeit, it may be true that he falsified certain business records. However, this was merely an ends to a means, not the goal. It was his own records, in his own business, and there was no allegation of fraud involved by his partners or creditors. The payment of "hush money" was based on a political motive. Donald Trump was merely protecting his political campaign from adverse publicity. In essence, this was a political violation, not a garden-variety business crime where ordinarily partners or investors are defrauded.

*J. The State Board of Elections failed to ensure the constitutional mandate for bi-partisanship.*

Any lay jury in the City of new York is likely a stronghold of Democratic Party sentiment. New York State is a dominated by the Democratic Party. The Democratic Party has majorities in the state assembly and state senate, and the governorship. This is a refection of an overwhelming number of Democratic Party members, particularly in the New York City area where the trial in *People v. Trump* was held.

The Manhattan District Attorney had to know that the likelihood of selecting a jury in that trial would mainly sympathize with the District Attorney, especially since Donald Trump's popularity ratings in New York were very low. It is the contention of the appellant that although this is how the judicial system generally

operates, the State rushed into a criminal indictment, rather than charging Donald

Trump for an illegal campaign expenditure, in order to try and prevent Donald

Trump from successfully campaigning for his re-election in New York. The point is

that the State Board of Elections is a constitutionally created body created to hear

and adjudicate any political issue, whether administrative, civil, or criminal, no

matter who is involved.

*K. When the State Board of Elections abrogates its duty to investigate election law crimes, it subjects the state judicial system to the risks of corruption. In effect, the State Board of Elections is the guardian of democracy in New York State, and the rule-of-law depends on the SBE.*

Coming back to the instant case where there was no election pending, the

appropriate jurisdiction for the appellant's complaint was the State Board of

Elections. There was no other option. Only an authorized member of the NYS

Police can bring criminal charges, and in this case, no one in the law enforcement

community came forward to even investigate the matter in the Newsday Special

Investigative Report. Yet there were crimes being committed.

Moreover, the record shows that there was no state official interested in either

hearing or investigating the Appellant's matter. In the mind of the Appellant, his

only concern was the possibility that there was ongoing criminal activity occurring

in a state supreme court involving his case. Presently, his family dispute continues

in the same courthouse with many of the same actors. He has recently asked

opposing counsel in this appeal for re-consideration and to grant him a hearing before the SBE, but to no avail.

## ARGUMENT

## I. THE APPELLANT HAD MADE NUMEROUS WRITTEN AND ORAL COMPLAINTS TO MEMBERS OF THE STATE BOARD OF ELECTIONS, BUT WAS DENIED AN OPPORTUNITY TO BE HEARD.

In the case at bar, the Appellant had learned from an independent investigative report that attorney, Ronald Rosenberg, was conducting potentially criminal violations of the Election Law and the Judiciary Act, as a court-appointed receiver, as reported in the Newsday Special Investigative Report, *"The Insiders."*

This was a serious concern to the Appellant, who was involved with Mr. Rosenberg, and was his opposing counsel in his family dispute, *Cohen v. Cohen*, [No.040466-2008, 018376-2009, and 10934-2010 (NY Sup. Ct., Riverhead, NY)].

The alleged violations committed by Mr. Rosenberg involved misappropriation of escrow funds that were used as contributions to a minor political party. This raised concerns of Mr. Rosenberg's involvement in corruption in the state supreme court and the potential for spill-over of corruption into the Appellant's case. As a result, the presiding Justice, the Hon. Emily Pines, summarily recused herself for the appearance of impropriety, but failed to ask for an investigation, or dismiss the case.

In order to remedy the matter, and to insure a fair trial in his family dispute, the Appellant submitted at least three formal written complaints to the State Board of Elections requesting that the SBE investigate the matter, as well as informal letters, and oral complaints to the Senior Investigator Officer, Ms. Genevra Cushman, to investigate the alleged illegal political contributions. Clearly, the Appellant was denied an opportunity to be heard.

## II. THE ELECTION LAW PROHIBITS ILLEGAL POLITICAL CONTRIBUTIONS.

The funds that Mr. Rosenberg diverted from a court-authorized escrow account were being held during a receivership lawsuit. The unauthorized misappropriation amounted to $92,000.00, and was made directly to a minority political party. Even if this was a legitimate and proper political contribution, it exceeded the state contribution limit of $62,500 under ELN 14-114. The penalties for such violations under ELN 14-126 make this a class E felony.

As a court-appointed receiver, Mr. Rosenberg, was acting under a sworn Oath. Under CPLR 6402, any appointed state official must take an Oath of Office since they are public officers. A public officer within the definition of NYPL Sec. 10.00(15) is a "public servant" and subject to the penal law.

In sum, Mr. Rosenberg should not have been allowed to practice law, if he committed any crimes. He has since passed, but the taint of corruption still hangs over the Appellant's family dispute. Meanwhile, the Appellant has lost his home,

financial resources, his family, and everything that he has ever worked hard for. It has also affected his health.

### III. THE VARIOUS PROVISIONS OF THE ELECTION LAW ALLOW FOR COMPLAINTS TO BE DIRECTED TO THE FULL BOARD OF ELECTIONS, AN AUTHORIZED BOARD COMMITTEE, OR THE DIVISION OF ENFORCEMENT WHICH INCLUDES SPECIAL INVESTIGATORS.

Under the circumstances, and with the knowledge that the Appellant was a victim of a serious violation of the election law, the State Board of Elections had an official duty to at least investigate the Appellant's allegations. Under ELN 3-104(2) (a) states, in part:

*"Whenever a local board of elections shall determine, on its own initiative or upon complaint, or otherwise, that there is a substantial reason to believe a violation of this chapter or any code or regulation promulgated hereunder has been committed by a candidate or political committee or other person...it shall be expeditiously make an investigation which shall include investigation of reports and statements made or failed to be made by the complainant..."*

However, neither the State Board of Elections, nor the members of the Division of Enforcement, including the Senior Investigator, Ms. Genevra Cushman, ever investigated in any of the Appellant's complaints. In addition, under APA 307(1) , the State Board never even communicated with the Appellant as to their decision not to investigate, as required by law.

**IV. THE STATE CONSTITUTION ALLOWS ANY COMPLAINT BROUGHT BEFORE THE STATE, AGAINST ANY INDIVIDUAL, IN WHICH THE INTENT INVOLVES A POLITICAL ISSUE OR VIOLATION OF THE ELECTION LAW, TO FIRST BE COMMENCED BEFORE THE STATE BOARD OF ELECTIONS.**

In the case at bar, the only opportunity for the Appellant to find a remedy for an illegal political contribution, and the risk of corruption spilling over into his lawsuit involving his family dispute was the State Board of Elections.

However, when it came to holding the head of the Republican National Committee, Donald Trump, accountable for his intent to protect his candidacy from potential political campaign expenditure violations and the related adverse publicity, Mr. Trump was also denied any administrative, civil, or even criminal proceeding before the SBE.

Instead, he was immediately criminally prosecuted within one of the most Democratic strongholds in the nation, New York City. Had the District Attorney referred the matter first to the State Board of Elections, as a potential violation of an illegal campaign expenditure, as the State Constitution intended, it is likely that there would have been a different outcome.

In the case at bar, the Appellant's lost opportunity for a fair and impartial hearing before the SBE, enabled a dishonest attorney, to escape criminal prosecution for his prima facie violations of the election law. This enabled the attorney to continue on a path of deceit and dishonesty in the Appellant's family

dispute. At the very least, the presiding justice understood her ethical obligation to recuse herself given the appearance of impropriety.


## CONCLUSION

In sum, the State Board of Elections is the guardian of our democracy. It is a constitutionally created state governmental body that has been bequeathed by the Framer's of the State Constitution with special subject matter jurisdiction.

This unique Board was set-up to hear political issues, and adjudicate election law violations. Nonetheless, for all the reasons cited above, both the US District Court and the State Board of Elections, declined to uphold both the US and New York State Constitutional and civil rights of the Appellant in this appeal.


## A PRAYER FOR RELIEF

The Appellant requests that this court find that the State Board of Elections violated the constitutional and civil rights of the Appellant in both the State Board of Elections, and the US District Court for the Northern District of New York.

Additionally, the Appellant requests that the State Board of Elections, Division of Enforcement or a Special Master under the Federal Rules of Civil Procedure Rule 53, be directed by this court to institute an immediate and comprehensive investigation into the ongoing state court action involving the Appellant's family dispute.

This is justified since that action was commenced by Mr. Ronald Rosenberg, the plaintiff's lead attorney, who committed prima facie cases of illegal and criminal activity based on an independent investigative report published by, Newsday, a member of the free press under the First Amendment to the US Constitution. The Counsel for Election Law Enforcement or Special Master should prepare a full report which includes any findings of violations of fraud or corruption, and to report back to this court within six months with its findings for further action. I thank the court for its attention to this matter.

Dated: May 14, 2025                    Respectfully Submitted,

Martin L. Cohen, pro se
1 Shore Avenue #464
Oyster Bay, NY 11771
Tel. (516)364-7632
onlineprof27@gmail.com

*Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via first class United States mail upon Ms. Alexandria Twinem, Esq., Office of the State Attorney General, Division of Appeals & Opinions, The Capitol Building, Albany, NY 13202.

Dated: May 14, 2025

Signed,

*M L C*

Martin L. Cohen

## CERTIFICATION OF TYPE-VOLUME COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify that this brief complies with the type-volume limitation set forth in Federal Rules of Appellate Procedure 32(a)(7)(B) and does not exceed the legal limit.

Dated: May 14, 2025

Signed,

*M L C*

Martin L. Cohen